IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

DAVID H. BARNETT, JR., )
)
Plaintiff, ) TC-MD 160066C
)
v. )
)
DEPARTMENT OF REVENUE, )
State of Oregon, )
)
Defendant. ) **FINAL DECISION**

Magistrate Dan Robinson wrote and signed the Decision in this matter, entered

August 30, 2016. This Final Decision incorporates that Decision without change. The court did

not receive a statement of costs and disbursements within 14 days after its Decision was entered.

*See* Tax Court Rule-Magistrate Division (TCR-MD) 16 C(1).

Plaintiff appeals Defendant's Notice of Assessment (assessment) dated January 26, 2016,

for the 2012 tax year. A trial was held in the courtroom of the Oregon Tax Court on June 27,

2016, in Salem, Oregon. Plaintiff appeared and testified on his own behalf. Charissa Nesler

(Nesler) testified on behalf of Plaintiff. Nichol Schauer (Schauer) appeared and testified on

behalf of Defendant. Plaintiff's Exhibits 1 through 5, 7, and 9 were received without objection.

Plaintiff's Exhibit 6 was received over Defendant's objection. Defendant's Exhibits C-1, C-2,

D-2, E-1 through E-6, F-1 through F-9, and H-1 through H-2 were received without objection.

I. STATEMENT OF FACTS

A. *Plaintiff's 2012 Return*

Complete copies of Plaintiff's 2012 federal and state income tax returns were not

submitted into evidence. Defendant submitted a copy of Plaintiff's Form 2106-EZ,

"Unreimbursed Employee Business Expenses." (Def's Ex B-2.) On that form, Plaintiff reported

$4,530 in vehicle expenses (mileage), $1,498 in parking expenses, $1,478 in travel expenses

FINAL DECISION TC-MD 160066C 1

(airfare, lodging, meals, etc. for job search), and $6,877 in other business expenses not included in the other three categories ("miscellaneous" expenses). (*Id*.) Defendant issued a Notice of Deficiency June 1, 2015, denying all of those deductions, which resulted in a tax-to-pay of $1,251. (Ptf's Exs 1.1-1.5.) Defendant subsequently issued a Notice of Assessment (assessment) January 26, 2016 upholding that deficiency. (Ptf's Ex 1.6.) Plaintiff timely appealed Defendant's assessment to this court.

The court notes at the outset that the trial testimony was often difficult to follow and that many of the exhibits are difficult to decipher. That said, the court gleaned the following facts.

B.     *Plaintiff's Employment at the Bar*

The parties agree that Plaintiff worked for the State of Oregon in 2012. Plaintiff testified that he also moonlighted at a bar in downtown Salem beginning in December 2011 and continuing through all of 2012. Plaintiff testified that his employment with the bar was based on a verbal agreement with one of the owners, and was never reduced to writing. Plaintiff did not offer any evidence, testimonial or otherwise, as to the specifics of his employment arrangement, either as to duties or pay. Plaintiff did testify on cross-examination that he was owed "about $15,000" for his work at the bar in 2012. Among the duties Plaintiff alleges he performed for the bar were putting up posters and otherwise promoting events at the bar such as musical performances, driving employees to and from the bar when they did not have transportation, picking up bands who were performing at the bar, hauling equipment, grocery shopping, and bookkeeping. Plaintiff also testified that he ran various errands for the bar and used a computer he purchased for his work at the bar partially for bookkeeping purposes and partially to play music through the bar's public announcement (PA) system. Plaintiff testified that the bar never paid him for any of the work he did, or reimbursed him for his mileage. Plaintiff testified that the bar closed in 2013 and that none of the owners were available to testify, as their whereabouts

were unknown. Plaintiff testified about other bar employees, and introduced emails between him and some of those employees, as well as Facebook posts referring to some of those individuals, but he did not call any of the bar's former employees to testify at trial. (Ptf's Ex 6.)

Plaintiff's collection of written communications – emails and Facebook posts – do tend to corroborate his testimony that he had some sort of working relationship with the bar. (*Id*.) When asked by Defendant why he thought he was employed at the bar, Plaintiff testified that he did everything he was asked to do; that he was there "so frequently." Plaintiff further testified that he not only thought he was an employee, but that he believed he might become a "partner" because there had been talk about bringing him on as part of the company at some point for a "small initial investment." Plaintiff reiterated that he worked all year without getting paid. Plaintiff also testified that he hoped one day to open a bar of his own. On cross-examination, Plaintiff conceded that he considered his job at the bar to be a "partial internship," and that one of the reasons he continued to work there without being paid was that he wanted to learn how to run a successful bar, but that he did understand and expect that he would be paid. Plaintiff stated that he told the owners before he was hired that he was not the ideal candidate for the bookkeeper job because he had not had experience in several years working for a private business. Plaintiff was hoping to gain and improve his private sector business and bookkeeping knowledge and skills.

B.      *Plaintiff's Mileage*

Plaintiff deducted $4,530 for mileage which he testified was related to his employment at the bar. Plaintiff submitted a document from a local auto dealer that serviced his vehicle. (Ptf's Ex 2.1.) That document includes odometer readings for times of service by the dealership. (*Id*.) Referencing that document, Plaintiff noted during trial that on June 18, 2010, his mileage was 86,210, and that approximately two years later, on July 19, 2012, his mileage had increased

to 104,169, which the court calculates to be a distance of 17,959 miles. (*see also* Ptf's Ex 2.1) Plaintiff further testified that approximately one year later, on July 20, 2013, his odometer reading was only 109,794 miles, an increase of only 5,625 miles. (*Id*.) Plaintiff testified that the purpose of the vehicle maintenance document was to demonstrate that his mileage was minimal prior to 2012 because he lived and worked in downtown Salem, and he walked to work and back, a distance of only two blocks, but that his mileage increased substantially when he started working for the bar in late 2011. Plaintiff testified that virtually all of his mileage in 2012 was related to his job at the bar; mileage for which he was not reimbursed.

Plaintiff testified that he kept a mileage log for every "errand" he ran for the bar, but that the log book – a little notebook – was unfortunately stolen from his truck on July 4, 2014, by thieves who tore out part of his console. Plaintiff testified that he reported the theft to the police, but he did not offer the police report into evidence. According to his testimony, Plaintiff wrote down where he went, who he was with and "that sort of stuff." Mileage was recorded "based on start to finish," not beginning and ending mileage. Plaintiff further testified that when he was preparing his taxes sometime in 2013, he took the log book and filled out an Excel spreadsheet reporting mileage by month and day, which he introduced as Exhibit 2.2. That spreadsheet does not include other information – particularly destination or purpose, nor does it tally mileage totals, either by month or for the year. (Ptf's Ex 2.2.)

C.    *Parking*

Plaintiff deducted $1,498.80 for parking. (Ptf's Ex 7.) Plaintiff testified that most of the parking expenses related to his job with the state in Salem, Oregon. Plaintiff testified that he owned a home in Klamath Falls, but that he had to live in Salem because of his state job in that town. Plaintiff stated that he rented an apartment two blocks away from where he worked. Plaintiff testified that he chose not to pay for state parking because his vehicle was too large for

most of the lots and that it would have been farther away for him to park in one of those lots – the yellow lot – than it cost to pay for the space he rented. Although it is not entirely clear from the evidence, it appears that Plaintiff paid $75 per month for his parking space in Salem, which totals $900 for the year. (*see* Ptf's Ex 7.) Plaintiff testified that the other parking expenses he deducted, although fewer in number and dollar amount, were for times when he had to pay to park while searching for a job. Plaintiff testified that he paid in cash at a ticket booth kiosk. Those expenses total $598.80. (*Id.*) Plaintiff did not elaborate on where those expenses were incurred, or for what jobs he was applying. Finally, Plaintiff testified that he did not have any receipts for his parking because his former girlfriend threw his attaché case that held those receipts out the window into the creek behind his apartment after he discovered she had drugs that he threw out the window into that creek.

D.    *Plaintiff's Job Search Activities*

As indicated above, Defendant's deficiency notice indicates that Plaintiff claimed $1,478 in travel expenses related to his search for employment in California. (Ptf's Ex 1.2.) Plaintiff claimed a larger figure at trial, as explained below.

Plaintiff testified that he has a bachelor's degree in management and accounting. Plaintiff submitted an unofficial transcript showing that he received a Bachelor of Science degree August 17, 2007, with a major in "Mgmt/Accounting Option." (Ptf's Ex 5.7.) Plaintiff submitted a number of exhibits showing that he was pursuing employment in the field of accounting. (*Id.* at 5.1-5.6.) Plaintiff was hoping to find a job in California because he was originally from that area and was interested in moving back to California if he could get a job there.

Plaintiff posted at least one job on Craigslist; an advertisement in August 2011 soliciting clients for whom Plaintiff could work part-time "on the side" as their bookkeeper here in

Oregon. (*Id*. at 5.1; Ptf's Trial Test.) Plaintiff also presented several email exchanges between himself and prospective employers. (Ptf's Ex 5.2-5.4.) Plaintiff was only able to produce evidence of five jobs he pursued because, after running into trouble with a prospective employer allegedly seeking to fill a position in California, but which turned out to be a scam involving an attempt to obtain Plaintiff's and other applicant's personal data, Plaintiff created a "burner" email which he began using in August 2012. Plaintiff testified that he no longer had access to that email account when preparing for trial because, in his words, "it did not result in a hiring." The court understands that testimony to mean that Plaintiff deleted the account. Of the five jobs applied for, three were in California. (Ptf's Exs 5.3, 5.4, 5.5-5.6.) Plaintiff applied for two of the California jobs in August and the third in October 2012. (*Id*.)

Plaintiff submitted a document titled "Job Search." (Ptf's Ex 3.) That document is a list of dates and dollar amounts Plaintiff contends were associated with his job search activities. (*Id*.) The total amount expended, according to that document, was $2,013.60. During Defendant's audit, Plaintiff had submitted a document for job-search expenses totaling $1,325.30. (Def's Ex E-2; Ptf's Ex 3.1.) Plaintiff did not go over all the charges in detail during trial. He did, however, testify that he found two additional expenses that he had not previously "recorded" when he was first audited. Those two charges appear on Plaintiff's credit card statement as purchases from Expedia on November 10, 2012, in the amounts of $487.96 and $168.03. (Ptf's Ex 3, 3.3.) Expedia sells airline tickets online. Those two expenses bring Plaintiff's claimed job-search expenses up to $1,981.29. Plaintiff reports another expense of $32.31 for an unidentified purchase in Beaumont, California on January 10, 2012. (*Id*. at 3.4.) Those figures bring the total claimed expenses to Plaintiff's trial figure of $2,013.60. Plaintiff did not submit any specific documents evidencing airline ticket purchases. Defendant submitted a copy of one airline ticket purchase made by Plaintiff for a flight departing from Portland

December 14, 2011, for Ontario, California, and returning January 10, 2012. (Def's Ex E-5.) That document does not indicate the cost of the ticket. Defendant submitted another of Plaintiff's credit card statements showing that Plaintiff made another Expedia purchase on November 10, 2012, in the amount of $357.82, for a total of three separate Expedia ticket purchases made on that date. (Def's Ex E-3; Ptf's Ex 3 and 3.1.) There is only the one airline ticket submitted by Defendant, and it is not clear from the evidence which Expedia transaction was for the round trip flight from Portland to Ontario. It is also unclear what flight destinations Plaintiff bought the other two tickets for, or when and where he traveled and why. There is no documentary evidence of Plaintiff's December 2012 trip to California other than the Expedia transactions discussed above and a letter from a friend discussed below.

Plaintiff testified about some of the other expenses listed in his Exhibit 3. Plaintiff testified that he did not have the receipt for the first expense on his list, which is for $201.99 on January 3, 2012, but that he knew that charge was for an airline ticket because he has a credit card statement showing a $64 payment to the "Hut Airport Shuttle," and Plaintiff testified that he only uses the shuttle when he is flying. (Ptf's Ex 3.2.) The transaction date indicated on the credit card statement Plaintiff referenced in his exhibits is December 8, *2011*. (*Id*.) Plaintiff further testified about two charges appearing on his job search sheet for $79.17. (Ptf's Ex 3.) Those charges are listed as having occurred on January 3 and 4, 2012. (*Id*.) Plaintiff testified that he no longer had receipts for those charges but that he stayed in hotels and that he remembered the dollar amount was "somewhere close to $79."

In summarizing his Exhibit 3, Plaintiff testified that the expenses in that exhibit represent his job search expenses for travel to California trying to find a new job. Plaintiff testified that the charges include hotels, the cost for checking additional airline bags, airplane tickets and "everything that revolves around [Plaintiff] finding a new job traveling to California." Plaintiff

testified that when he flew to California he had two bags, one of which contained his "interview outfit," which he described as suits, ties, and "all that." Plaintiff acknowledged during trial that he did not have receipts for the two $50 airline baggage charges because he paid in cash as it was more convenient. Notably, Plaintiff did not testify about any particular jobs he applied for while in California, or any interviews he had during that trip.

Plaintiff submitted one other document pertaining to his trip to California in 2012. (Ptf's Ex 9.) That document is a letter from a woman named Vicki Hoagland Guthrie (Guthrie) dated June 17, 2016. (*Id*.) That letter states in part:

> "David Barnett has been a life long friend of my Family since my youngest Son was the age of 2. In the year 2012, David Barnett was in need of a job here in California. So I offered David to come stay with us rent free. While he was searching for a job at my house, he used our address for all of his correspondence and job applications.
>
> "* * * * *
>
> "When David would [have] multiple interviews lined up in one month he stayed with us. During that time, while he stayed with us, he was able to use one of our cars at will. When some interviews were so far out of town, it would be too far for David to come back home safely the same day. He would stay in a hotel until those interviews were over. Then he would come back to stay with us."

(*Id*.)

Plaintiff testified that the letter from Guthrie provided "third-party verification" that he was staying in California with Guthrie and her family while looking for jobs, and that he was planning on moving to California if he could find a job.

Defendant brought out on cross-examination that Plaintiff traveled to the same California destination around the holidays in 2011 and 2012. While he was there in December 2011, Plaintiff acknowledged that he paid to take the Guthrie family he stayed with out to dinner several times, paid to have the oil changed in one their vehicles, and on December 20, 2012, he paid to take them to Disneyland. (Def's Ex E-4.) Plaintiff also acknowledged that he traveled to

Las Vegas for several days including December 29, 2011, during his December 2011 to January 2012 trip. (Ptf's Ex 3.4.) Plaintiff's credit card statement bears that out. (Ptf's Ex 3.4; Def's Ex H-3.) Plaintiff did not claim those expenses on his 2012 tax return, but Defendant asserted they demonstrated that Plaintiff's trips each year were largely, if not entirely, personal in nature, particularly when coupled with the fact that he stayed with friends and had no proof of any job-related search activities as explained above (no interviews or applications).

E.      *"Other Expenses" – Computer & Clothing*

Plaintiff claimed $6,877 on line 4 of his 2106-EZ for unreimbursed employee business expenses not included in lines 1 through 3 (which are for mileage, parking, tolls, transportation, away from home travel expenses including lodging and airfare, etc.). (Def's Ex B-2; Ptf's Ex 1.2.) That category of expenses apparently included the purchase of two computers and computer software, as well as clothing. (Ptf's Ex 1.2-1.3.)

Plaintiff testified that he bought a used laptop off Craigslist for $1,200 on December 14, *2011*. Plaintiff submitted a portion of a bank statement showing that a check for that amount was written on that date; check number 2068. (*Id*. at 4.1.) Plaintiff testified that the computer, which he used for bookkeeping/accounting for the bar, as well as playing music for the patrons, completely malfunctioned, or in his words, "fried," sometime in April 2012. Plaintiff testified that rather than dealing with another used computer he instead bought all of the necessary core components (power supply, CPU, hard drive, memory, graphics, motherboard, the case, and Windows 7 software) to build a new computer from a company called Newegg. Plaintiff submitted a two-page receipt from that company that reflects a total cost of $2,101.93. (*Id*. at 4.3-4.4.) The date of that order was May 30, 2012. (*Id*. at 4.3.) The receipt for the purchase of those computer parts includes a charge of $49.99 for a computer game. Plaintiff testified that the computer game was a "free ad-on," but acknowledged on cross-examination that

there was no credit effectively reversing the $49.99 charge. He also testified that the second computer was his personal computer; that he was not required by the bar to purchase that computer, but the bar needed it so he used it there until October 2012. After that time, he brought it back and forth to the bar because there was increasing trouble and dissention at the bar. Plaintiff testified that he had a friend named Trevor, a computer science major, help him build the computer, and he paid the friend $300 for that help. Plaintiff submitted a document signed by Trevor Wilks dated June 16, 2016, stating that he was "confirming the payment of $300 do [sic] services rendered in 2012, in regards to the total time and assembly putting together a computer." (*Id*. at 4.11.) Plaintiff also submitted a photograph of the computer with his friend Trevor's daughter standing beside it. (*Id*. at 4.9.) The computer appears to be approximately three feet tall and two feet wide. (*Id*.)

Plaintiff submitted one other receipt for an online order of additional memory for the computer ordered June 6, 2012 for a cost of $149.97. (*Id*. at 4.5.) Plaintiff testified that he purchased other computer parts including a cable, mouse, and keyboard, etc., but that he did not have proof of those expenses in his exhibits; however, the exhibits were included in Defendant's evidence. The exhibits in Defendant's evidence consist of two pages from a credit card statement for 13 items bought between May 14, 2012 and June 30, 2012, totaling $2,710.38. (Def's Ex F-3, F-4.) Those statements do not indicate the items purchased but merely the vendor, date, and amount. (*Id*.) At trial, Plaintiff reported total computer related expenses of $4,228.37. (Ptf's Ex 4.2.)

Plaintiff's other expense under that category was for uniforms that he deducted as a work-related expense. (Def's Ex G-2.) According to the testimony, the amount of the deduction was $1,020.56. Plaintiff acknowledged on cross-examination that the "uniform" expenses

/ / /

should not have been taken as a deduction because they were not for specialized clothing required as a condition of his employment and not suitable for everyday wear.

## II. ANALYSIS

The primary issue presented is whether Plaintiff may deduct unreimbursed employee business traveling expenses for the 2012 tax year.

The Oregon Legislature intended to "[m]ake the Oregon personal income tax law identical in effect to the provisions of the Internal Revenue Code relating to the measurement of taxable income of individuals, estates and trusts, modified as necessary by the state's jurisdiction to tax and the revenue needs of the state[.]" ORS 316.007(1).[1] "Any term used in this chapter has the same meaning as when used in a comparable context in the laws of the United States relating to federal income taxes, unless a different meaning is clearly required or the term is specifically defined in this chapter." ORS 316.012. On the issues presented in this case, "Oregon law makes no adjustments to the rules under the Internal Revenue Code (IRC) and therefore, federal law governs the analysis." *Austin v. Dept. of Rev.*, 20 OTR 20, 22 (2009) (citing ORS 316.007; ORS 316.012(1)).

Deductions are "a matter of legislative grace" and taxpayers bear the burden of proving their entitlement to the deductions claimed. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992). "In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief * * *." ORS 305.427. In this case Plaintiff must establish his claim by a preponderance of the evidence, or the more convincing or greater weight of the evidence. *Feves v. Dept. of Revenue.*, 4 OTR 302, 312 (1971). This court has stated that the preponderance standard means "more likely than

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to 2011.

not." *See Dunzer v. Dept. of Rev.*, 21 OTR 479, 485 (2014). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). Finally, "[i]n an appeal to the Oregon Tax Court from an assessment made under ORS 305.265, the tax court has jurisdiction to determine the correct amount of deficiency[.]" ORS 305.575.

A.    *Business Expense Deductions*

IRC section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." "To be 'necessary[,]' an expense must be 'appropriate and helpful' to the taxpayer's business. * * * To be 'ordinary[,]' the transaction which gives rise to the expense must be of a common or frequent occurrence in the type of business involved." *Boyd v. Comm'r*, 83 TCM (CCH) 1253, WL 236685 at *2 (2002) (citations omitted). Ordinary and necessary business travel expenses, including transportation, are deductible under IRC section 162(a). Parking and expenses for items such as computers may be deductible if required for a job and not reimbursed by the employer.

B.    *Substantiation*

IRC section 274(d) imposes strict substantiation requirements for travel, meals, entertainment, gifts, and "listed property" under IRC section 280F(d)(4)(A)(i). *See* Treas Reg § 1.274-5T(a). To substantiate travel expenses, the taxpayer must prove the expenditure amount, the time, the place, and the business purpose of the travel. Treas Reg § 1.274-5T(b)(2). "To meet the 'adequate records' requirement of [IRC] section 274(d) [for transportation expenses], a taxpayer shall maintain an account book, diary, log, statement of expense, trip sheets, or similar records * * * and documentary evidence * * * which, in combination, are sufficient to establish each element of an expenditure or use * * *." *See Miller v. Dept. of Rev.*, TC-MD 150358N, 2016 WL 2859520 at *5 (May 2016), *citing* Treas Reg § 1.274-5T(c)(2)(i).

The strict substantiation requirements preclude or "supersede the doctrine found in *Cohan v. Commissioner*, 39 F2d 540 (2nd Cir 1930), under which [the court] may approximate expenses in certain cases where the exact amount of expense cannot be determined." *See Aldea v. Comm'r (Aldea)*, TC Memo 2000-136, Slip Op at 10-11, 2000 WL 371549 at *4, 79 TCM (CCH) 1917 (Apr 2000). " 'Listed property' includes passenger automobiles and computers [and] computer-related peripheral equipment" under IRC sections 274(d)(4) and 280F(d)(4)(A)(i), (iv) and (v). *See Noz v. Comm'r*, TC Memo 2012-272, 2012 WL 4344158 at *4, 104 TCM (CCH) 350 (Sept. 2012); *Aldea*, 2000 WL 371549 at *4.

C.     *Plaintiff's Deductions*

Plaintiff deducted expenses for unreimbursed employment related mileage for his job at the bar, parking related to his day job with the state and for unspecified job interviews, airfare and lodging related to job-searching activities in California, plus two computers and related software, etc., and clothing. At trial Plaintiff clarified that he was no longer seeking the $1,020.56 deduction for "uniforms" or clothing.

There are a number of problems with all of Plaintiff's claimed expenses. There is no proof Plaintiff had a job at the bar, therefore, any expenses he allegedly incurred are not deductible as unreimbursed employee expenses. The court found Plaintiff's testimony to be largely credible, but the nature of his activities at the bar, coupled with a lack of persuasive evidence of employment and his admission that the "job" was partly in the nature of an internship, leads the court to conclude Plaintiff was not *employed* by the bar. The testimony and other evidence (emails and other social media communications) evinces a hope on Plaintiff's part that his time and service at the bar might at some point lead to actual employment with defined terms such as pay, duties, and hours, but there is simply insufficient evidence for the court to

/ / /

conclude Plaintiff was truly working at the bar in 2012; rather, his time there seems to have been a combination of education, personal pleasure, and potential employment.

That conclusion eliminates the $4,530 of unreimbursed automobile mileage Plaintiff claimed on his return, plus the $4,228.37 in computer expenses.

The court finds none of the $1,498.80 in parking expenses Plaintiff claimed is allowable because there are absolutely no receipts, specific persuasive testimony, or other supporting documentation establishing any allowable employment related parking expenses. The $900 in parking expenses is not allowed because it was reported as an expense for parking for Plaintiff's job with the state, and constitutes nondeductible commuting expenses. *See* IRS Pub 463. The other $598 of claimed parking expenses is simply not substantiated.

Plaintiff conceded he was not entitled to the $1,020.56 uniform deduction he claimed, a concession with which the court agrees as there is no evidence or claim by Plaintiff that he purchased clothing required for employment that was not suitable for ordinary everyday wear. *Kozera v. Comm'r*, 52 TCM (CCH) 1264, TC Memo 1986-604 (1986), *citing Yeomans v. Commissioner*, 30 TC 757, 767-769 (1958). That expense was included in Plaintiff's "other" or "miscellaneous" expenses category along with the computer costs. The total for the two comes to $5,248.93. Plaintiff claimed $6,877 on line 4 of his 2106-EZ. The evidence is unclear regarding the other $1,628.07 included in the miscellaneous expense category.

The next category of expenses is travel for Plaintiff's claimed job search activities in California. A taxpayer may deduct expenses incurred in seeking employment. *Primuth v. Comm'r*, 54 TC 374 (1970). If the expenses constitute "personal, living or family expenses," they are not deductible. IRC § 262(1); Treas Reg 1.262–1(b)(5).

Plaintiff claimed job search expenses totaling $2,013.60 for airline tickets, hotels, airline baggage charges, shuttle costs for transportation to the airport, and a number of other expenses

listed on a document he created but not specifically identified. (Ptf's Ex 3.) Plaintiff had credit card statements for some of the charges (mostly Expedia airfare purchases), totaling $752.30. (*Id*. at 3.2-3.4.)

There are a number of problems with Plaintiff's evidence regarding job-search expenses. Most importantly, the trips to California appear to the court to be more personal in nature than business related. The evidence shows that Plaintiff, who is from California, apparently traveled to California around the holidays in both 2011 and 2012. Both trips straddled two calendar years (*e.g.*, December 14, 2011 to January 10, 2012). While he was there, he stayed with friends, who he took out to dinner and to Disneyland. Plaintiff also traveled to Las Vegas for several days around December 29, 2011. Although Plaintiff does not appear to have claimed expenses associated with the trip to Las Vegas in 2011, it does, as Defendant asserted during trial, tend to show that Plaintiff was in California for personal as opposed to business reasons. Also, the ticket for that trip was purchased in 2011 and is not deductible on Plaintiff's 2012 return. Importantly, there is no evidence that Plaintiff had any interviews while he was in California, or that he submitted any job applications while he was down there.

Another troubling fact is that there are no receipts for many of the claimed expenses and the only airline ticket, introduced by Defendant, is for a trip by air leaving December 14, 2011, and returning January 10, 2012. (Def's Ex E-5.) Although the ticket tends to establish that Plaintiff went to California during that time frame, there is no evidence as to the cost of that ticket. The only evidence of the purchase of airline tickets is for transactions that occurred in the latter part of calendar year 2012. Therefore, if the court had concluded that a preponderance of the evidence established Plaintiff traveled to California to seek employment, it would be unable to determine the amount to be allowed as a deduction for airfare for the 2011-2012 trip. The evidence is also somewhat confusing to the court in that Plaintiff apparently made three online

airfare purchases on the same day – November 10, 2012 – for a total of $1,013.81. (Ptf's Ex 3.1, 3.3; Def's Ex E-3.) And, Plaintiff claims to have made another airline ticket purchase on January 3, 2012 in the amount of $201.99, an expense that lacks any supporting documentation. Regarding that latter expense ($201.99), Plaintiff testified that he knew the charge was for an airline ticket because he had a credit card statement showing that he spent $64 to ride the shuttle to the airport that same day (January 3, 2012), and that he only used the shuttle when he was flying. The credit card statement for the shuttle ride that Plaintiff testified corroborated the $201.99 airline ticket purchase shows a shuttle charge with a "transaction date" of December 8, 2012, that posted December 12, 2012. (Ptf's Ex 3.2.) The two dates simply do not match up.

Plaintiff did submit a letter written by Guthrie, the woman whose family he testified he stayed with. That letter, however, is somewhat general in nature and Guthrie was not available to testify; Defendant therefore lacked the opportunity to cross-examine her to try and elicit more detail as to the nature of Plaintiff's stays with her family. Additionally, Guthrie states in her letter, which was written June 17, 2016, that Plaintiff "has been a life long friend of my Family." Although evidence from the friend is admissible, the closeness of relationship in this case makes it all the more important that the author of the letter he available for cross-examination because the letter is self-serving and, to be frank, it is not unheard of for a friend to stretch the truth to help a friend. That is why it is particularly important when, in the absence of other corroborating documentary evidence, and the written statements of the friend are key to establishing a business purpose for a trip, that the individual who authors the letter be called or at least available to testify on the day of trial.

In summation, although the court is willing to accept as fact that Plaintiff traveled to California, the evidence simply does not persuade the court that the purpose of the trips was business-related and therefore a deductible ordinary and necessary business expense under

IRC section 162. Rather, as stated above, the travel to California appears to have been personal in nature.

## III. CONCLUSION

After carefully and painstakingly considering the evidence, the court concludes that Plaintiff is not entitled to any of the $14,383 in disputed expenses claimed on his 2012 return. Accordingly, Defendant's assessment stands. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal for 2012 is denied for lack of substantiation.

Dated this ____ day of September 2016.


_____
POUL F. LUNDGREN
MAGISTRATE

***If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.***

***Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.***

***This document was filed and entered on September 19, 2016.***